# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 6906 | **DATE** | September 28, 2001 |
| **CASE TITLE** | *Liberty Mutual Ins. Co. v. Construction Management Services* | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached memorandum opinion and order, defendant Wheaton Warrenville's motion to dismiss counts four, five, and six of the third amended complaint [26-1], erroneously reflected on the docket as a motion to dismiss counts four and five of the second amended complaint is GRANTED.

(11) ☐ [For further detail see order on the reverse side of the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | | number of notices |
| ✓ | Notices mailed by judge's staff. | | SEP 2 8 2001 |
| | Notified counsel by telephone. | | date docketed |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | FILED FOR DOCKETING | docketing deputy initials |
| | Copy to judge/magistrate judge. | 01 SEP 28 PM 2:05 | |
| RTS | courtroom deputy's initials | | date mailed notice |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY, a Massachusetts Corporation,<br><br>Plaintiff,<br><br>CONSTRUCTION MANAGEMENT SERVICES, INC., an Illinois Corporation, MID AMERICAN LEASING of ILLINOIS, INC., an Illinois Corporation, R.D. MARKO CONSTRUCTION COMPANY, an Illinois Corporation, RICHARD D. MARKO, KATHY L. MARKO, and WHEATON WARRENVILLE COMMUNITY UNIT SCHOOL DISTRICT #200,<br><br>Defendants. | 99 c 6906 |

## MEMORANDUM OPINION AND ORDER

**BLANCHE M. MANNING, District Judge:**

Plaintiff Liberty Mutual Insurance Company ("Liberty Mutual") has filed a five-count third amended complaint. In count one, Liberty alleges breach of contract against Construction Management Services, Inc., ("CMS"), Mid America Leasing of Illinois, Inc. ("Mid America"), R.D. Marko Construction Company ("R.D. Marko"), Richard D. Marko, and Kathy L. Marko. In count two, Liberty seeks indemnification against these same parties. In count three, Liberty alleges fraud against CMS and Richard Marko. In count four, Liberty alleges conversion against Wheaton Warrenville Community Unit School District #200 ("Wheaton"), CMS, and Richard Marko. Count five of the complaint alleges equitable subrogation against Wheaton.

Wheaton has moved to dismiss counts four and five of the complaint for lack of subject matter jurisdiction under Federal Rules of Civil Procedure 12(b)(1) & 12(b)(6). For the following reasons, the motion is GRANTED.

## I. *Standard for Ruling on a Motion to Dismiss under Rule 12(b)(1) & 12(b)(6).*

The standard of review for a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction depends upon the purpose of the motion. *See Freiburger v. Emery Air Charter, Inc.*, F.Supp. 253, 256 (N.D.Ill. 1992). If the defendant challenges the sufficiency of the allegation regarding subject matter jurisdiction, the court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *United Transp. Union v. Gateway Western Ry. Co.*, 78 F.3d 1208 (7th Cir. 1996). If, however, the defendant denies or controverts the truth of the jurisdictional allegations, the court may properly "look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993) (citations omitted).

In ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must assume the truth of all well-pleaded facts alleged in the complaint, construing the allegations liberally and viewing them in the light most favorable to the plaintiffs. Fed.R.Civ.P. 12(b)(6). *See, e.g., McMath v. City of Gary*, 976 F.2d 1026, 1031 (7th Cir. 1992); *Gillman v. Burlington Northern R.R. Co.*, 878 F.2d 1020, 1022 (7th Cir. 1989). A motion to dismiss is properly granted only if no set of facts which the plaintiffs could prove consistent with the pleadings would entitle them to relief. *Conley v. Gibson*, 355 U.S. 41, 45-56,

78 S.Ct. 99 (1957); *Kunik v. Racine County, Wis.,* 946 F.2d 1574, 1579 (7th Cir. 1991); citing, *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229 (1984).

## *II.* *Background*

The following facts are taken from Liberty Mutual's third amended complaint and are considered true for the purpose of the motion to dismiss.

### A. The Performance Bonds and the General Agreement of Indemnity

From June 1998 to January 1999, Liberty Mutual, an insurance company, issued a series of "contractor's payment and performance bonds" (the "performance bonds") each of which named defendant CMS as the principal. Additionally, each of the performance bonds named as the obligee a separate municipal or county entity. These performance bonds pertained to construction projects that CMS was performing for these entities. Therefore, the Kirby School District was named as obligee in a performance bond for construction on an elementary school. The Botaba Realty Company was obligee for a construction project for public street improvements in Matteson, Illinois. There were a few other performance bonds issued by Liberty Mutual including one that named defendant Wheaton as obligee for construction projects for the Warrenville South High School and Edison Middle School (the "Warrenville project").

What these otherwise unrelated construction projects shared in common was that CMS was performing the work and Liberty Mutual issued the performance bonds on the projects. And on June 30, 1998, in consideration for the performance bonds issued by Liberty Mutual, defendants CMS, Mid America, R.D. Marko, Richard and Kathy Marko (referred to now as the "defendant indemnitors") executed and delivered a General Agreement of Indemnity (the "GAI"). Under the terms of the GAI, the defendant indemnitors agreed to indemnify Liberty

Mutual from all loss and expense incurred in connection with the bonds issued by Liberty Mutual

The GAI sets forth the following:

> Indemnity - The Principals and Indemnitors shall exonerate, indemnify, and keep indemnified the Surety from and against any and all liability for losses, fees, costs and expenses of whatsoever kind or nature . . .

Under the terms of the GAI, the defendant indemnitors agreed to assign all contract proceeds to Liberty. That section of the GAI reads:

> Assignment - The Principals and the Indemnitors hereby consenting, will assign, transfer, pledge and convey to the Surety, and do hereby assign, transfer, pledge and convey to the Surety, as collateral security for the full performance of the covenants and agreements herein contained and for the payment of any other indebtedness of liability of the Principals and/or Indemnitors . . .

### B.  The Warrenville Project

On November 9, 1998, CMS entered into a contract with defendant Wheaton on the Warrenville project. On December 10, 1998, Liberty executed the performance bond on behalf of CMS for the construction work on the project. On March 26, 1999, CMS sent a letter of voluntary default to Wheaton, whereby CMS voluntarily abandoned and terminated its construction contract, triggering Liberty Mutual's obligations under the performance bond. On the same day, CMS also sent a letter of direction to Wheaton instructing it to make all future disbursements of the contract funds not to CMS, but directly to Liberty Mutual

Liberty Mutual alleges that it relied on the letter of instruction from CMS to Liberty Mutual – meaning that it expected Wheaton to send it all future payments under the construction contract. Therefore, Liberty Mutual extended financing to CMS which enabled CMS to complete the construction project thereby releasing Liberty Mutual's obligations under the performance bond. In its complaint, Liberty Mutual alleges that, pursuant to its obligations

under the performance bonds, it has made payments to bond claimants and legal counsel in excess of $75,000 as a result of CMS's terminating its construction contract. Liberty Mutual's claims against Wheaton in counts four, five, and six, however, amount to $50,018.33.

The basis of Liberty Mutual's conversion, breach of stakeholder's duty, and equitable subrogation claims is that Wheaton did not follow the directions in CMS's letter of instruction. That is, instead of sending future payments under the construction contract to Liberty Mutual as the letter requested, Wheaton made the remaining payments to CMS, pursuant to the original contract terms.

III. *Discussion*

A. **Supplemental Pendent Party Jurisdiction**

Wheaton, in its motion to dismiss, argues that the court is without jurisdiction to hear counts four and five of Liberty Mutual's third amended complaint because (1) the claims against Wheaton do not satisfy the amount in controversy requirement for diversity jurisdiction under 28 U.S.C. § 1332 and (2) the claims against Wheaton are completely unrelated to the claims raised against the indemnitors as required for the court to exercise supplemental jurisdiction under 28 U.S.C. § 1367.

Title 28 U.S.C. § 1332, which sets forth the requirements for diversity jurisdiction, states that "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . ." Title 28 U.S.C. § 1367 governs the court's exercise of supplemental jurisdiction. Section 1367(a) provides:

> Except as provided in subsections (b) and (c) . . . in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to the claims in

5

the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution . . .

The supplemental jurisdiction statute authorizes federal courts to hear all claims that "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Section 1367(a) authorizes the exercise of supplemental jurisdiction over both pendent claims and pendent parties. *See Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1182 (7th Cir. 1993). The test for relatedness is whether the federal and state claims "derive from a common nucleus of operative fact" so that the relationship between the claims "permits the conclusion that the entire action . . . comprises but one constitutional case." *See Groce v. Eli Lilly & Co.*, 193 F.3d 496, 500 (7th Cir. 1999); *Microsoft Corp. v. Logical Choice Computers, Inc.*, 2000 WL 1038143 *3 (N.D. Ill. July 24, 2000). The Seventh Circuit hold that even a loose factual connection is sufficient to confer jurisdiction. *See Ammerman v. Sween*, 54 F.3d 423, 424 (7th Cir. 1995).

Thus, Liberty Mutual's claims against the defendant indemnitors allege that it has made payments to performance bond claimants and legal counsel in excess of the sum of $75,000 required for diversity jurisdiction under 28 U.S.C. § 1332. So, while the amount of $50,018.33 which Liberty Mutual seeks against Wheaton falls short of the diversity jurisdiction requirement, Liberty Mutual alleges that its claims against Wheaton derive from the same case or controversy as those against the defendant indemnitors and, therefore, the court may exercise pendent party supplemental jurisdiction over Liberty Mutual's claims against Wheaton

In response to the motion, Liberty Mutual argues that the court has jurisdiction to hear its claims against Wheaton because the claims against Wheaton and the other defendants "are

6

derived in pertinent part from a common nucleus of operative facts." To support its argument, Liberty Mutual cites only to *Corporate Resources, Inc. v. Southeast Suburban Ambulatory Surgical Center, Inc.*, 774 F.Supp. 503 (N.D.Ill. 1991). In *Corporate Resources,* plaintiff was in the business of providing financing for leased equipment. Southeast was a corporation providing medical care which entered into a lease for equipment. Additionally, the lawsuit named eight individual physicians each of whom made personal guaranties on behalf of Southeast. Southeast defaulted on its lease, triggering the liability against the individual defendants. Plaintiff's claims against five of those individual defendants did not satisfy the amount-in-controversy requirement to invoke diversity jurisdiction.

The district court ruled that it had pendent party jurisdiction over the claims against those individual defendants. The court held that because it had diversity jurisdiction over the other parties, it would exercise pendent party jurisdiction over the claims against the five defendants because "all the counts in this action 'derive from a common nucleus of operative facts' and are such that a plaintiff would 'ordinarily be expected to try them in one judicial proceeding.'" *Id.*, citing *Gibbs,* 383 U.S. at 725, 86 S.Ct. at 1138.

The Seventh Circuit also holds that § 1367 "allows suit by a pendent plaintiff who satisfies the diversity requirement but not the jurisdictional amount." *Stromberg Metal Works, Inc. v. Press Mechanical, Inc.*, 77 F.3d 928, 931 (7th Cir. 1996). Therefore, the fact that the claims against Wheaton do not reach the amount-in-controversy requirement will not bar this court from hearing Liberty Mutual's claims against it if it finds that they are derived from a common nucleus of facts. It does.

The claims against Wheaton are related to the same set of facts that give rise to Liberty Mutual's claims against CMS and the defendant indemnitors. While Liberty Mutual's allegations of liability are different, it nevertheless remains in the interest of judicial economy to exercise jurisdiction over Liberty's claims against Wheaton.

### B. Count Four: Conversion

In its complaint, Liberty Mutual alleges that it had an "immediate right to possession of the remaining contract funds" when CMS sent Wheaton the letter of default and letter of instruction. Therefore, because Wheaton sent the remaining funds to CMS, Liberty Mutual alleges that Wheaton "wrongfully converted sums to which Liberty Mutual is rightfully entitled." Liberty Mutual seeks "all contract funds wrongfully disbursed to [CMS] plus interest and the attorneys' fees and costs incurred in bringing this action." In its motion, Wheaton counters that the complaint fails to allege the elements of conversion under Illinois law.

In Illinois, the tort of conversion is "any unauthorized act, which deprives a man of his property permanently or for an indefinite time." *In re Thebus*, 108 Ill.2d 255, 259, 483 N.E.2d 1258 (1985); *see, Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Wilkins-Lowe & Co., Inc.*, 29 F.3d 337, 340 (7th Cir. 1994). Illinois courts explain that "the essence of conversion is the wrongful deprivation of one who has a right to the immediate possession of the object unlawfully held." *Thebus*, 108 Ill.2d at 259, 483 N.E.2d at 1260; *Farns Assocs, Inc. v. Sternback*, 77 Ill.App.3d 249, 252, 395 N.E.2d 1103 (1979) ("The essence of an action for conversion is the wrongful deprivation of property from which the person is entitled to possession").

To state a claim for conversion, a plaintiff must allege (1) the defendant's unauthorized and wrongful assumption of control, dominion or ownership over the plaintiff's personal

8

property, (2) the plaintiff's right in the property, (3) the plaintiff's right to immediate possession of the property, absolutely and unconditionally and (4) the plaintiff's demand for possession of the property. *Roderick Development Investment Co., Inc., v. Community Bank of Edgewater*, 282 Ill.App.3d 1052, 1057, 668 N.E.2d 1129, 1133 (1996); *General Motors Corp. v. Douglass*, 206 Ill.App.3d 881, 565 N.E.2d 93 (1990).

Generally, a conversion action lies only for "personal property which is tangible, or at least represented by or connected with something tangible." *Thebus*, 108 Ill.2d at 260, 483 N.E.2d at 1260. This rule is consistent with the idea that the subject of a conversion action be an identifiable object of property to which the plaintiff has wrongfully been deprived. *Id.*

Money may be the subject of a conversion action, however, so long as it is capable of being described as a specific piece of chattel. *Id.* However, "an action for the conversion of funds may not be maintained to satisfy a mere obligation to pay money." *Id.* The *Thebus* court cited to its holding in an 1899 case to illustrate the point. In *Grand Pacific Hotel v. Rowland*, 88 Ill.App. 519 (1899), a patron gave a waiter a $500 bank note to cover a $6 dinner bill. The waiter disappeared. The *Thebus* court held that conversion was an appropriate cause of action to recover the money. *Thebus*, 108 Ill.2d at 261, 483 N.E.2d at 1261. The *Thebus* court also cited to *Addante v. Pompilio*, 303 Ill.App. 172 (1940), where the plaintiff deposited with the defendant $3,000 to transmit to the plaintiff's brother in Italy. The defendant did not forward the money but used it for himself instead. *Thebus*, 108 Ill.2d at 260-261, 483 N.E.2d at 1261. In sum, the *Thebus* court held that conversion actions for money "will not lie for money represented by a general debt or obligation. It must be shown that the money claimed . . . at all times belonged to

the plaintiff and that the defendant converted it to his own use." *Id.; see, Roderick*, 282 Ill.App.3d at 1059, 668 N.E.2d at 1134.

Liberty Mutual's allegations do not sufficiently state a claim for a conversion action for money. Unlike the cases cited by *Thebus* above, the money that Liberty Mutual seeks from Wheaton has *never* belonged to it. Instead, the complaint seeks money belonging to Wheaton, that Liberty Mutual claims it is *now* owed because of CMS's default on the construction contracts. As such, it is a claim for money owed by a "general debt or obligation" the kind which the *Thebus* court stated a plaintiff could not seek by way of a conversion action.

Liberty Mutual cites to *Roderick*, which is appropriate enough since it is just another case which illustrates why Liberty Mutual's claim for conversion fails. In *Roderick*, plaintiff was the owner of a 5% interest in a real estate joint venture subject to the rights of the partner who sold the interest. That partner conveyed his shares to a trust. Therefore, the plaintiff's interests became subject to the rights of the trust. The trust later became indebted to a bank, so it entered into an agreement with the bank where it assigned to it the interests in the joint venture – subject to the plaintiff's interests. Subsequently, the bank refused to distribute to the plaintiff the proceeds (from the sale of the real estate) generating from the trust, essentially disavowing that it had any interest at all. The plaintiff brought a conversion claim to recover the money that represented its interest in the joint venture.

The *Roderick* court recognized that *Thebus* held that "there could be no conversion action for money represented by a general debt or obligation." *Id. Roderick* was, however, distinguishable because "the amount the plaintiff claim[ed] the Bank converted did not accrue but was a determinate amount . . ." *Id.* at Ill.App.3d 1059, 668 N.E.2d 1135. That is, the

10

plaintiff always had an identifiable interest (5%) in the proceeds that the bank refused to distribute to it. Further, the court held that the "amount the bank allegedly converted in this case was not merely a portion of its own assets that it was obligated to use to satisfy a debt to the plaintiff. Instead, it was a specific amount transferred to it from an outside source, the purchaser [of the real estate]. In this respect, it was identifiable." *Id.*

While the plaintiff in *Roderick* specified an identifiable interest in money that was in the defendant's control, Liberty Mutual's conversion claim fails to offer the same. Liberty Mutual has not alleged that Wheaton had in its possession a "determinate amount" that belonged to Liberty Mutual Rather, Liberty Mutual alleges that Wheaton's obligation to pay it accrued after CMS defaulted on the construction contract. Therefore, Liberty Mutual's conversion claim fails to state a claim because it fails to allege that Wheaton was in wrongful possession of a specified chattel of Liberty Mutual's.

### C. Count Five: Breach of Stakeholder's Duty

In count five of its complaint, Liberty Mutual alleges that Wheaton breached its duty as a stakeholder. Specifically, Liberty Mutual alleges that, upon receiving CMS's notice of default and letter of instruction, it "owed a duty to [Liberty Mutual] as a stakeholder of the remaining contract funds." Liberty Mutual alleges that Wheaton "breached its duty as stakeholder of the remaining contract funds by paying the remaining contract funds on the Warrenville project directly to CMS. Wheaton's motion to dismiss contends that it simply was never a stakeholder and, therefore, had no duty to breach.

In Illinois, a "stakeholder is one who is in control over the subject matter of the controversy in which he has no interest and against whom relief is demanded by rival claimants.

11

A stakeholder stands perfectly indifferent between the claimants." *Estate of Dawson*, 168 Ill.App.3d 391, 396, 522 N.E.2d 770, 774 (1988). Therefore, a stakeholder claims no interest in the stake himself, rather, he merely has control over what rival parties claim is theirs.

In *Morelli v. California Pizza Kitchen, Inc.*, 1997 WL 162895 (March 27, 1997 N.D.Ill.), plaintiff entered into a contract to purchase one of defendant's restaurants. Pursuant to the contract's terms, plaintiff deposited $50,000 into an escrow account held by a title company. The deal fell through and when plaintiff sought the return of his deposit, the title company refused.

This court ruled that it lacked subject matter jurisdiction over plaintiff's complaint because his claims against the title company ruined diversity. Plaintiff characterized the title company as a stakeholder – because it was holding the escrow funds. The court, however, held that plaintiff's other claim against the title company – breach of fiduciary duty – transformed the title company "from a stakeholder to a real party in interest." Therefore, the title company's citizenship had to be considered for diversity jurisdiction. The title company's citizenship would not have been a consideration if it was merely a stakeholder. *Salem Trust Co. v. Manufacturers' Fin. Co.*, 264 U.S. 182, 189-90, 44 S.Ct. 266 (1924).

The *Morelli* court is instructive to this case for two reasons. First, it illustrates what a stakeholder is. The title company in *Morelli* was holding escrow funds that undisputedly did not belong to it. However, the rights to the funds were contested between two other parties. Another common scenario involving a stakeholder arises in interpleader cases where an insurer holds policy benefits, the rights to which are claimed by other rival parties. *See e.g., American Family Mutual Ins. Co. v. Roche*, 830 F.Supp. 1241, 1243 (E.D. Wis. 1993) (stakeholder seeking interpleader "must not have or claim any interest in the subject-matter" and "must stand perfectly

indifferent between [rival parties], in the position merely as a stakeholder). In each instance, the funds are not the stakeholder's own -- nor are they contested to be. Put another way, a stakeholder is to a "stake" he controls as a basketball referee is to a jump-ball. He holds it, but he does not claim it for his own. Rather, he willingly allows the rival contestants to fight for it.

Second, in *Morelli*, the plaintiff claimed that the title company breached a fiduciary duty. The court held that the separate claims against the purported stakeholder transformed it into a real party in interest. The holding in *Morelli* underscores the rule that stakeholders must stand perfectly indifferent between the parties.

Liberty Mutual's allegations against Wheaton do not fit it within the stakeholder mold. Liberty Mutual claims that Wheaton *owes* it money from its own pockets under the terms of the construction contract. Liberty Mutual would argue that CMS's letter of instruction transformed Wheaton into a stakeholder. That argument fails. Nothing about the letter of instruction turns the funds owed under the construction contract into a "stake." Wheaton was still obligated to pay for the construction under the contract. So, what Liberty Mutual describes as a "stake," Wheaton calls its own money. Further, Liberty Mutual has made other tort allegations against Wheaton in counts four (conversion) and six (equitable subrogation). Liberty Mutual's claims make Wheaton a real party in interest, not a stakeholder. Therefore, the court dismisses count five of plaintiff's third amended complaint.

### D. Count Six: Equitable Subrogation

In count six of the complaint, Liberty Mutual alleges that "[w]hen CMS sent its letter of voluntary default . . . Liberty Mutual became equitably subrogated to the rights of CMS to any funds due or to become due to CMS under its contract with Wheaton Warrenville." Therefore,

13

Liberty Mutual alleges that it "is entitled to receive from Wheaton Warrenville, all funds which were due to CMS at the time of and following its . . . default."

Under Illinois law, a plaintiff seeking equitable subrogation "must establish that he paid a claim or a debt for which a third party is primarily liable and that he seeks to enforce a right against that third party." *Gearing v. Check Brokerage Corp.*, 233 F.3d 469, 472 (7th Cir. 2000). Further, the party claiming the right of subrogation must establish that he is not a volunteer, but was compelled to satisfy the debt. *Id.* When the subrogee satisfies these elements, he steps into the shoes of the subrogor and is entitled to "step into the shoes of, or be substituted for, the one whose claim or debt he has paid and can only enforce those rights which the latter could enforce." *Dix Mutual Ins. Co. v. LaFramboise*, 149 Ill.2d 314, 319, 597 N.E.2d 622, 624 (1992).

In its motion, Wheaton contends that Liberty Mutual cannot claim to be subrogated to the rights of CMS because the doctrine applies only "when one pays a debt for which another is primarily liable." That is, Wheaton contends that Liberty Mutual never paid a debt for which it is responsible. However, Liberty Mutual does allege in its complaint that it "extended financing to CMS which enabled CMS to complete the project and which discharged Liberty's obligations to Wheaton Warrenville under the Bond." Still, Liberty Mutual's complaint fails to state a claim for equitable subrogation.

As stated above, assuming that it satisfies the necessary pleading requirements of equitable subrogation, Liberty Mutual is allowed to enforce the rights of CMS. However, sitting in the shoes of CMS offers Liberty Mutual no relief. Liberty Mutual alleges that Wheaton paid CMS under the construction contract. Therefore, as a subrogee of CMS, Liberty Mutual has no claim against Wheaton because Wheaton has satisfied the contract's terms. Liberty Mutual

14

attempts to use equitable subrogation to step into CMS's shoes to enforce its own claims -- that Wheaton should have paid Liberty Mutual directly – and not those it assumes as subrogee to CMS's rights. Therefore, Wheaton motion to dismiss count six is GRANTED.

## CONCLUSION

For the foregoing reasons, the court GRANTS Wheaton's motion to dismiss counts four, five, and six of Liberty Mutual's third amended complaint. IT IS SO ORDERED.

*Blanche M. Manning*
Blanche M. Manning, U.S.D.J.

Dated: SEP 28 2001