Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 6906 | **DATE** | September 2, 2003 |
| **CASE TITLE** | *Liberty Mutual v. Construction Management* | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth in the attached Memorandum and Order, the School District's motion to dismiss Counts V (equitable subrogation) and VI (assignment) of Liberty Mutual's fourth amended complaint [55-1] is denied. Status is set for September 19, 2003 at 10:30.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| ✓ | Notices mailed by judge's staff. | | SEP 0 4 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 03 SEP -3 AM 8:51 | | |
| RTS | courtroom deputy's initials | FILED FOR DOCKETING 1-03 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| LIBERTY MUTUAL INSURANCE CO., <br> Plaintiff, | ) <br> ) <br> ) | |
| v. | ) | 99 C 6906 |
| | ) | |
| CONSTRUCTION MANAGEMENT <br> SERVICES, INC., et al., <br> Defendants. | ) <br> ) <br> ) | |

DOCKETED
SEP 4 2003

## MEMORANDUM AND ORDER

Defendant Wheaton-Warrenville Community Unit School District No. 2000 (the "School District") seeks to dismiss Counts V (equitable subrogation) and VI (assignment) of plaintiff Liberty Mutual's fourth amended complaint. The court will assume familiarity with the court's prior orders and the standards governing motions to dismiss under Rule 12(b)(6). For the following reasons, the School District's motion to dismiss Counts V and VI is denied.

DOC.
SEP 4 2003

## Equitable Subrogation

Liberty Mutual issued a series of performance bonds naming Construction Management Services ("CMS") as the principal. The bonds also named various municipal or country entities, which had construction projects being completed by CMS, as obligees. In addition, CMS and its fellow defendants, Mid America, R.D. Marko, and Richard and Kathy Marko, executed a General Agreement of Indemnity ("GAI") which required them to indemnify Liberty Mutual for any loss or expense associated with the performance bonds.

One of the performance bonds was issued in connection with a construction project at Warrenville South High School and Edison Middle School (the "Warrenville project"). CMS sent a letter of voluntary default to the School District. This letter stated that CMS was

abandoning the Warrenville project. This triggered Liberty Mutual's obligations under the performance bond. CMS also sent a letter to the School District instructing it to make all future disbursements of the contract funds directly to Liberty Mutual.

Liberty Mutual previously alleged that it was equitably subrogated to CMS. Its theory was that when CMS defaulted, Liberty Mutual became equitably subrogated to the rights of CMS to any funds due or to become due to CMS under its contract with the School District. The court held that subrogating Liberty Mutual's claims to CMS would not help Liberty Mutual because Liberty Mutual was contending that the School District should have paid it directly, not that it wanted to take over a claim that belonged to CMS.

This time around, Liberty Mutual contends that it is equitably subrogated to the School District. As the court has previously held, under Illinois law, a plaintiff seeking equitable subrogation must establish that: (1) he paid a claim or a debt for which a third party is primarily liable and that he seeks to enforce a right against that third party; and (2) he was compelled to satisfy the debt and was not a volunteer. *Liberty Mut. Ins. Co. v. Construction Management Services, Inc.*, No. 99 C 6906, 2001 WL 1159203, at *8-9 (N.D. Ill. Sep 28, 2001), *citing Gearing v. Check Brokerage Corp.*, 233 F.3d 469, 472 (7th Cir.2000). If a subrogee establishes both of these elements, he is entitled to step into the shoes of the entity whose claim or debt he paid but can only enforce the rights which that entity could enforce. *Dix Mutual Ins. Co. v. LaFramboise*, 149 Ill.2d 314, 319 (Ill. 1992).

The School District contends that Liberty Mutual cannot be subrogated to it because Liberty Mutual never paid a debt owed by the School District. It concludes that this claim must fail because Liberty Mutual is trying to get money from the School District, not step into its

shoes. In response, Liberty Mutual asserts that because CMS defaulted, it incurred costs under the performance bond because it financed CMS's completion of the project and paid subcontractors. It contends that this means that it paid debts on behalf of the School District and that it, therefore, is entitled to receive contract funds held by the School District under a subrogation theory.

So, does Liberty Mutual's payments to CMS constitute a payment by Liberty Mutual of a debt owed by the School District? The court finds that the answer to this question is "yes." Liberty Mutual paid the subcontractors on behalf of CMS and otherwise financed CMS's completion of the project. This both released CMS from its obligations to the subcontractors and benefitted the School District, which otherwise would have had an equitable obligation to pay these debts. *See Henningsen v. United States Fidelity & Guarantee Co.*, 208 U.S. 404, 410-11 (1908); *see also National Surety Corp. v. United States*, 118 F.3d 1542, 1546-47 (Fed. Cir. 1997).

In other words, CMS (the contractor) owed a debt pursuant to a contract because Liberty Mutual (the surety) paid CMS's debts to allow the School District (the owner) to get its building completed. However, the School District, as the owner, also had an equitable obligation to ensure that CMS's debts in connection with the project were paid. *See Henningsen*, 208 U.S. at 410. It thus also was indebted to Liberty Mutual . *See id.* It did not satisfy this obligation when it paid CMS (the defaulting contractor) instead of Liberty Mutual (the surety who actually paid the subcontractors and material providers). The upshot of this is that the School District cannot leave the surety holding the bag after it paid CMS's contractor's debts so the School District's project could be finished.

Other courts faced with similar situations have reached similar conclusions. For example, in *Henningsen*, Henningsen (the contractor) contracted with the United States (the owner) to construct several buildings, and United States Fidelity (the surety) guaranteed that persons supplying labor or materials would be paid. 208 U.S. at 410-11. Henningsen defaulted and the surety paid its debts in connection with the buildings. The Supreme Court held that the surety was contractually obligated to make these payments and that the payments not only released the contractor from its contractual obligations but also released the owner from its equitable obligations. *Id.* It thus allowed the surety to pursue a claim against the owner.

Similarly, in *National Surety*, the contractor defaulted but the government (the owner) did not withhold 10% of the project payments as the contracts required it to do. 118 F.3d at 1543. The surety ended up paying the 10% and sued the government. The trial court held that the surety was a third party beneficiary of the contract between the contractor and the owner and that the government breached the contract when it failed to make the proper withholdings. It thus concluded that the government was liable to the surety. *Id.* at 1545.

The Federal Circuit affirmed, explaining that the surety was entitled to be subrogated to any security held by the government. As it explained, "[t]he duty devolves upon the government to administer the contract, during the course of its performance, in a way which does not materially increase the risk that was assumed by the surety when the contract was bonded." *Id.* at 1546. It thus concluded that the government's improper release of the security did not avoid liability to the surety for its losses. *Id.* at 1547.

This makes sense because the surety is not ultimately responsible for the debt. It is contractually required to guarantee payment, but either the owner or the contractor is ultimately responsible for making sure that everyone connected to the project gets paid. The Supreme Court

has thus recognized that it is possible for a surety to pursue a subrogation action against an owner even if the surety's contract is with the contractor. *See Henningsen*, 208 U.S. at 410-11. Morever, as in *National Surety*, the School District had an obligation to make sure that it did not materially increase the surety's risk. The School District thus is potentially liable to Liberty Mutual based on the fact that it paid monies under the contract to CMS when Liberty Mutual was, in fact, footing CMS's bills. For these reasons, Liberty Mutual may pursue a subrogation claim against the School District and the motion to dismiss Count V is denied.

## Assignment

It is well-established that an assignee steps into the shoes of his assignor. *Carlyle v. Jaskiewicz*, 124 Ill. App. 3d 487, 492 (1st Dist. 1984). This means that she acquires the same rights as her assignor but can have no greater rights than the assignor. *Id*. Moreover, under Illinois law, a public school district receives notification of an assignment when a notice comes to its attention or "is duly delivered at the place of business through which the contract was made or at any other place held out by him as the place for receipt of such communications." *First Nat. Bank at East St. Louis v. Board of Ed., School Dist. No. 189*, 68 Ill. App. 3d 21, 25 (5th Dist. 1979).

In Count VI of its fourth amended complaint, Liberty Mutual alleges that CMS assigned any contract proceeds to it and that the assignment became effective when CMS sent the letter stating that it was defaulting. It also emphasizes that Liberty Mutual stresses that the assignment became effective before the School District paid CMS so the School District should have paid it as the assignee. In response, the School District contends that Liberty Mutual (the assignee) cannot state a claim against it under an assignment theory because CMS (the assignor) has no

claim against it given that the School District paid CMS. It also asserts that Liberty Mutual's assignment claim fails as a matter of law because the complaint does not allege that the Board of Education received the letter advising the School District of the assignment.

In Illinois, an obligor may pay an assignor until it "receives notification that the amount due or to become due has been assigned and that payment is to be made to the assignee." *Matter of Assured Fastener Products Corp.*, 773 F.2d 105, 107 (7th Cir. 1985). This rule protects an obligor who has already paid the original obligee without notice that an assignment has been made from having to pay twice, as the payment to the original obligor discharges the debt. *Id.* The rule also places the risk of leaving the obligor in the dark on the assignee. *Id.*

Here, Liberty Mutual alleges that it gave notice to the School District before the School District paid CMS. This is enough to state a claim under an assignment theory. The precise timing of events and the nuances of what the School District knew before it paid CMS cannot be resolved in a Rule 12(b)(6) motion to dismiss. Thus, the motion to dismiss Count VI is denied.

## Conclusion

The School District's motion to dismiss Counts V (equitable subrogation) and VI (assignment) of plaintiff Liberty Mutual's fourth amended complaint [55-1] is denied.

DATE: 9-2-03

Blanche M. Manning
United States District Court Judge

99cv6906.md