# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 6906 | **DATE** | October 5, 2004 |
| **CASE TITLE** | *Liberty Mutual v. Construction Mgmt. Serv., et al.* | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____ .

(3) ☐ Answer brief to motion due _____ . Reply to answer brief due _____ .

(4) ☐ Ruling/Hearing on _____ set for _____ at _____ .

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .

(7) ☐ Trial[set for/re-set for] on _____ at _____ .

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____ .

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] The School District's Motion to Dismiss Counts V and VI of the Fifth Amended Complaint is granted in part and denied in part [R. 81-1].

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | OCT 06 2004 | |
| | Notified counsel by telephone. | | date docketed | 92 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| RTS/s | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LIBERTY MUTUAL INSURANCE        )
COMPANY,                        )
                                )
        Plaintiff,              )
                                )
        v.                      )        Case No. 99 C 6906
                                )
CONSTRUCTION MANAGEMENT         )        Judge Blanche M. Manning
SERVICES, INC., MID AMERICA     )
LEASING OF ILLINOIS, INC.,      )
R.D. MARKO CONSTRUCTION         )
COMPANY, RICHARD D. MARKO,      )
KATHY L. MARKO, and WHEATON     )
WARRENVILLE COMMUNITY UNIT      )
SCHOOL DISTRICT #200,           )
                                )
        Defendants.             )

**DOCKETED**

OCT 0 6 2004

## MEMORANDUM AND ORDER

Pursuant to federal diversity jurisdiction, Liberty Mutual Insurance Company ("Liberty

Mutual") brings this six count Fifth Amended Complaint. Defendant Wheaton Warrenville

Community Unit School District # 200 ("the School District") moves this court to dismiss

Counts V (equitable subrogation) and VI (assignment) pursuant to Federal Rule of Civil

Procedure 12(b)(6). For the following reasons, the School District's Motion to Dismiss is

granted in part and denied in part.

## I.    BACKGROUND

The following facts are drawn from Liberty Mutual's Fifth Amended Complaint and

accompanying attachments and are accepted as true for the purposes of the School District's

motion to dismiss. Liberty Mutual, a surety, issued a series of performance bonds naming

defendant Construction Management Services ("CMS") as the principal. The bonds named

various municipal and county entities that had construction projects being completed by CMS, as obligees, including the School District. In addition, defendants CMS, Mid America, R.D. Marko Construction, Richard Marko, and Kathy Marko executed a General Agreement of Indemnity ("GAI") which required them to indemnify Liberty Mutual for any loss or expense associated with the performance bonds.

One of the performance bonds secured CMS's performance as a subcontractor of the construction of a high school and middle school in Wheaton, Illinois (collectively "the Warrenville Project"). The general contractor of the Warrenville Project was Bovis Construction Corporation. In early 1999, CMS became financially unable to perform the remainder of the Warrenville Project. On March 26, 1999, CMS sent a letter of voluntary default to the School District whereby CMS voluntarily abandoned and terminated its construction contract. Meanwhile, Liberty Mutual alleges that it extended financing to CMS with the expectation that CMS would be able to complete the Warrenville Project. Liberty Mutual's financing was in exchange for the remainder of the contract funds to be paid directly to Liberty Mutual pursuant to the GAI. On March 26, 1999, CMS sent a letter of direction to the School District instructing the district to make all future payments of the contract funds directly to Liberty Mutual. Despite the letter of direction, the School District made payments to CMS instead of Liberty Mutual.

On May 21, 1999, Liberty Mutual notified the School District of CMS's letter of direction and demanded all future payments be made directly to Liberty Mutual. On July 19, 1999, the general contractor, Bovis, sent a letter to CMS requesting CMS to return to the Warrenville Project to complete its work under the terms of the contract. On August 4, 1999, Bovis notified Liberty Mutual that CMS had returned to the Warrenville Project and that it would

not be seeking other subcontractors to complete CMS's work. Liberty Mutual was confused by this letter and responded to Bovis stating that it was informed by the School District's counsel that due to CMS's voluntary default, CMS was no longer working on the Warrenville Project. However, on September 10, 1999, the School District's counsel sent a letter to Liberty Mutual stating that the information he provided to Liberty Mutual was incorrect and that CMS's work on the Warrenville Project was completed, and thus there were no grounds for the School District to declare CMS in default under the contract. Counsel further stated that CMS had performed all that was required under its contract with the School District.

Finally, Liberty Mutual alleges that the School District hired other subcontractors to complete a portion of CMS's work under the contract without giving Liberty Mutual notice.

## II. STANDARD FOR A 12(b)(6) MOTION TO DISMISS

In ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must assume the truth of the facts alleged in the pleadings, construe the allegations liberally, and view them in the light most favorable to the plaintiff. *See Flannery v. Recording Indus. Assoc. of Am.*, 354 F.3d 632, 637 (7th Cir. 2004); *Hickey v. O'Bannon*, 287 F.3d 656, 657-58 (7th Cir. 2002). When considering a motion to dismiss, this court is restricted to reviewing the pleadings, which consist of the complaint, any attached exhibits, and the supporting briefs. *See Thompson v. Illinois Dept. of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). Under Rule 12(b)(6), dismissal is appropriate if there is no possible interpretation of the complaint under which it can state a claim. *See Flannery*, 354 F.3d at 637.

## III. DISCUSSION

### A. Equitable Subrogation (Count V)

In the present motion, the School District contends that according to the unambiguous language of the performance bond, only the School District can declare that CMS was in default, thereby triggering Liberty Mutual's obligations under the bond. In other words, the School District contends that a condition precedent to Liberty Mutual's obligations under the performance bond is that the School District – not CMS or Liberty Mutual – must declare CMS in default before Liberty Mutual can remedy any such default. Accordingly, the School District contends that Liberty Mutual was not legally compelled under the performance bond to provide financing to CMS to complete the Warrenville Project. *See Gearing v. Check Brokerage Corp.,* 233 F.3d 469, 472 (7th Cir. 2000) ("party claiming a right of subrogation must establish that he is not a volunteer, but instead is under compulsion to satisfy the debt"). In support of its argument, the School District points to the following language in the parties' performance bond:

> NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION is such that, if Contractor [CMS] shall promptly and faithfully perform said Contract, then this obligation shall be null and void: otherwise it shall remain in full force and effect.
>
> The Surety [Liberty Mutual] hereby waives notice of any alteration or extension of time made by the Owner [the School District].
>
> **Whenever Contractor [CMS] shall be, and declared by Owner [the School District] to be in default under the Contract,** the Owner having performed Owner's obligations thereunder, the Surety [Liberty Mutual] may promptly remedy the default or shall promptly
>
>> 1) Complete the Contract in accordance with its terms and conditions, or
>>
>> 2) Obtain a bid or bids for completing the Contract in accordance with its terms and conditions . . . .

4

(*See* Fifth Amend. Compl., Ex. A, Performance Bond #285000103, p. 2 (emphasis added)).

Because an agreement creating a secondary obligation, *i.e.,* a suretyship, is a contract, the court applies contract principles in interpreting the performance bond at issue. *See Mountbatten Surety Co., v. Szabo Contracting, Inc.*, 349 Ill.App.3d 857, 100, 285 Ill.Dec. 501, 812 N.E.2d 90 (Ill.App.Ct. 2004); *see also* Restatement (Third) of Security, Suretyship & Guaranty, § 14 (1996). When interpreting a contract, the court must consider the agreement as a whole and give unambiguous terms their plain and ordinary meaning. *See First Ins. Funding Corp. v. Fed. Ins. Co.*, 284 F.3d 799, 804 (7th Cir. 2002) (citations omitted); *see also People ex rel. Ryan v. Environmental Waste Res., Inc.*, 335 Ill.App.3d 751, 757, 270 Ill.Dec. 97, 782 N.E.2d 291, 296 (Ill.App.Ct. 2002) (surety contracts strictly construed).

Strictly construing the surety contract at issue, the court concludes that the performance bond is clear on its face – the School District must declare CMS in default before Liberty Mutual's obligations under the performance bond are triggered. Although there is no Seventh Circuit or Illinois case law in the context of performance bonds to give this court guidance, other Circuit Courts have concluded that similar language in performance bonds require that the obligee must declare the principal in default before the surety's contractual duties are triggered. *See, e.g., Elm Haven Constr. Ltd. v. Neri Constr. LLC,* 376 F.3d 96, 100-01(2d Cir. 2004); *Seaboard Surety Co. v. Town of Greenfield,* 370 F.3d 215, 219-20 (1st Cir. 2004); *L & A Contracting Co. v. Southern Concrete, Servs., Inc.,* 17 F.3d 106, 110 (5th Cir. 1994).

Liberty Mutual points out that in many of these cases the surety was attempting to avoid its duties under the performance bond, and thus the cases are not persuasive because Liberty Mutual did not avoid its duties, but attempted to remedy the alleged default. Liberty Mutual's distinction, however, is not germane to this court's analysis. Despite the factual differences of

the cases, they all have one important aspect in common – the contract language of the performance bond requiring the owner/obligee to declare the contractor/principal in default before any of the surety's obligations arise.

Citing a Fourth Circuit case from 1929, Liberty Mutual also contends that courts have held that under similar circumstances a surety is equitably subrogated to the remaining contract funds notwithstanding the lack of formal notice of default by the obligee. *See Lacy v. Maryland Cas. Co.*, 32 F.2d 48, 53 (4th Cir. 1929). The *Lacy* decision is easily distinguishable from the case at bar. The performance bonds at issue in *Lacy* did not have similar language as the performance bond in this matter, that is, that the obligee is the only party that can declare the contractor in default before the surety's duties arise. *See id.* at 50. In sum, Liberty Mutual has not provided this court any controlling or persuasive authority to support its conclusion that CMS's "informal default" allowed Liberty Mutual to step into the shoes of CMS and become entitled to the proceeds under the construction contract.

Finally, the court notes that "not every breach of a construction contract constitutes a default sufficient to require the surety to step in and remedy it." *See L & A Contracting Co.*, 17 F.3d at 110. In *L& A Contracting Co.*, the Fifth Circuit defined a legal default as a material breach or series of material breaches of such magnitude that the obligee/owner is justified in terminating the construction contract. *See id.* This definition explicitly requires that the obligee must terminate the construction contract, not the principal or surety. *See id.* As such, the Fifth Circuit's definition of default further supports this court's interpretation that the performance bond requires the School District to declare CMS in default before Liberty Mutual's obligations are triggered.

Next, Liberty Mutual argues that based on the School District's failure to notify it regarding the hiring of additional subcontractors, the School District wrongfully used the remaining contract funds, and thus Liberty Mutual has sufficiently alleged a claim of subrogation as to these funds. Liberty Mutual bases its argument on *Dragon Constr., Inc. v. Parkway Bank & Trust*, 287 Ill.App.3d 29, 34, 222 Ill.Dec. 648, 678 N.E.2d 55, 58 (Ill.App.Ct. 1997). In *Dragon*, the Illinois Appellate Court examined the owner and construction company's obligations under the construction contract – which was incorporated into the performance bond – and the performance bond itself. *See id.*, 287 Ill.App.2d at 31-33. After examining the two contracts, the *Dragon* court concluded that the owner's failure to give the surety seven days notice that the initial contractor was terminated, stripped the surety of its contractual right to minimize its liability under the performance bond. *See id.*

The circumstances of this case are different than in *Dragon*. First, the initial contractor, CMS, was never terminated or declared in default by the School District. Second, because Liberty Mutual has failed to provide this court with the construction contract between CMS and the School District – although the performance bond indicates that the contract "is by reference made part hereof" – it is unclear if the parties' had additional duties concerning the hiring of subcontractors and other notice requirements beyond those in the performance bond itself.

Furthermore, despite Liberty Mutual's assertions that it was not provided notice regarding the additional subcontractors, Liberty Mutual alleges in its Fifth Amended Complaint that the School District notified it that one of the subcontractors, Eriksson Engineering ("Eriksson"), would complete "As-Built" drawings. (*See* Fifth Amend. Compl., ¶ 30). In fact, Liberty Mutual attaches its letter to Bovis Construction Company authorizing Eriksson's additional work. (*See* Fifth Amend. Compl., Ex. M). Also, Liberty Mutual has provided a letter sent by Bovis to

7

Liberty Mutual giving notice of the need for DuPage Topsoil and Molitor Landscaping to do additional work on the Warrenville Project. (*See* Fifth Amend. Compl., Ex. O).

In sum, Liberty Mutual's allegations do not support a claim of equitable subrogation regarding the additional subcontractor funds, as well as the funds the School District paid to CMS. Therefore, the court grants the School District's motion to dismiss Count V of the Fifth Amended Complaint.

**B.    Assignment (Count VI)**

Next, the School District contends that because it did not declare CMS's voluntary default a default under the terms of the performance bond, Liberty Mutual has not alleged a claim of assignment. Liberty Mutual, on the other hand, asserts that the performance bond does not control its assignment claim. Instead, Liberty Mutual argues that the assignment claim is governed by the GAI which outlines different ways in which CMS's duties arise. In support of its argument, Liberty Mutual cites to the following language from the GAI:

> Third: Assignment – The Principals and the Indemnitors hereby consenting, will assign, transfer, pledge, and convey to the Surety, and do hereby assign, transfer, pledge and convey to the Surety, as collateral security for the full performance of the covenants and agreements herein contained and for the payment of any other indeptedness or liability of the Principals and/or Indemnitors to the Surety, whether heretofore or hereafter incurred, the assignment in the case of each contract shall become effective as of the date of the Bond covering such contract, but only in the event of:  **(1) any abandonment, forfeiture or breach of any contract referred to in the Bonds or any breach of any Bond; or (2) a default in discharging any indebtedness or liabilities incurred in connection therewith ....**

(*See* Fifth Amend. Compl., Ex. B, at 1) (emphasis added).

The court agrees with Liberty Mutual that the School District's failure to declare CMS in default is not required before Liberty Mutual is entitled to exercise its rights under the indemnity agreement. *See Mountbatten Surety Co. v. Szabo Contracting, Inc.*, 349 Ill.App.3d 857, 285

8

Ill.Dec. 501, 812 N.E.2d 90, 100-01 (Ill.App.Ct. 2004) (default of performance bond not required

for plaintiff's rights under indemnity agreement to be triggered). Examining the present GAI

pursuant to concepts of contract interpretation, *see id.*, the agreement contains six ways in which

CMS's duties are triggered, including CMS's abandonment or breach of the Warrenville contract

and default in discharging any other indebtedness or liabilities. The language of this indemnity

contract does not indicate that the School District must declare that CMS is in default before

CMS's obligations to Liberty Mutual under the GAI are triggered. *See L & A Contracting Co.,*

17 F.3d at 110 ("not every breach of a construction contract constitutes a default sufficient to

require the surety to step in and remedy it"). Furthermore, the performance bond does not speak

to the parties' rights and obligations under the GAI and the GAI was not made part of the

performance bond by reference.

Based on the indemnity contract's language, this court has already determined that

Liberty Mutual has properly alleged an assignment claim against the School District in its Fourth

Amended Complaint. *See Liberty Mutual Ins. Co., v. Construction Mgmt. Serv., Inc.,* No. 99 C

6906, 2003 WL 22071481, at *3-4 (N.D. Ill. Sept. 4, 2003). Here, Liberty Mutual relies on the

same language in the GAI in its Fifth Amended Complaint. Again, although it is unclear what

the School District knew or did not know before it paid CMS, such factual matters need not be

resolved at this procedural posture. *See id.* at *4; *see also Swierkiewicz v. Sorema,* 534 U.S. 506,

512 (2002) ("notice pleading standard relies on liberal discovery rules and summary judgment

motions to define disputed facts and issues and to dispose of unmeritorious claims").[1]

---

[1] Liberty Mutual's estoppel and waiver arguments fail because there are no allegations
that the School District was aware that Liberty Mutual extended financing to CMS to complete
the Warrenville Project when the School District made payments to CMS. In other words, there
is no allegation that the School District knowingly accepted the benefits of Liberty Mutual's
financing arrangement with CMS. *See Wasserman v. Autohaus on Edens, Inc.,* 202 Ill.App.3d

Accordingly, the School District's Motion to Dismiss Count VI of the Fifth Amended Complaint is denied.

## IV.    CONCLUSION

For the above reasons, the School District's Motion to Dismiss Counts V and VI of the Fifth Amended Complaint is granted in part and denied in part [R. 81-1].

**ENTER:**

*Blanche M. Manning*

**Blanche M. Manning**
**United States District Judge**

**DATE:**   OCT  0 5 2004

---

229, 238-39, 147 Ill.Dec. 571, 559 N.E.2d 911 (Ill.App.Ct. 1990).  Likewise, the School District did not waive its right to declare CMS in default, especially in light of this court's discussion on the differences between default and breach. *See L & A Contracting Co.,* 17 F.3d at 110.